**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RAMON REYES,

                Plaintiff,                Civ. No. 09-5309(DRD)

v.                                           **O P I N I O N**

KEITH MACHINERY CORP., et al.,

                Defendants.

*Appearances by:*

GINARTE, O'DWYER & WINOGRAD
by:    Richard M. Winograd, Esq.
400 Market Street
Newark, NJ 07105

    *Attorney for Plaintiff*

HAWORTH COLEMAN & GERSTMAN, LLC
by:    Scott L. Haworth, Esq.
        Abigail Bowen, Esq.
45 Broadway, 21st Floor
New York, NY 10006

    *Attorneys for Defendant Keith Machinery Corporation*

SWEENEY AND SHEEHAN
by:    John Michael Kunsch, Esq.
216 Haddon Avenue
Suite 500
Westmont, NJ 08108

    *Attorney for Defendants Makino, Inc., Littleford Brothers, Inc., Littleford Day, Inc., and LFB Inc.*

**DEBEVOISE, Senior District Judge**

On September 27, 2007, Plaintiff Ramon Reyes suffered severe injuries to his hand when it inadvertently became trapped in a three-roll ink mill that he was cleaning for his employer, Union Ink Company ("Union Ink"). Plaintiff has brought suit against the manufacturer of the ink mill and the equipment dealer who sold it to his employer, alleging that the ink mill was defective and unreasonably dangerous as designed, manufactured, and sold. Plaintiff seeks compensatory damages for his physical injuries, psychological trauma, and lost earnings. Plaintiff also seeks punitive damages.

Presently before the court are motions for summary judgment filed by Defendants Makino, Inc., Littleford Brothers, Inc., Littleford Day, Inc., and LFB Inc. (collectively "Littleford") and Defendant Keith Manufacturing Corp. ("Keith Manufacturing"). For the reasons set forth below, Defendants' motions are GRANTED as to the negligence and breach of warranty counts of Plaintiff's complaint and otherwise DENIED.

## I.   BACKGROUND

The basic facts of the accident are not in dispute. Plaintiff Ramon Reyes was hired in 2004 by Union Ink, a company that manufactures ink for clothing and signs. (Littleford Ex. A, 14-15). Reyes worked first as an ink packer, packaging finished ink for shipment to customers. Id. at 28. He was later trained to operate one of Union Ink's eight three-roll mills. Id. at 29-30. A three roll mill is a machine that uses three horizontally positioned rolls rotating at opposite directions and different speeds relative to each other to mechanically mix, refine, disperse, or homogenize viscous materials. Such mills are widely used to mix electronic thick film inks, high performance ceramics, cosmetics, plastisols, carbon/graphite, paints, printing inks, pharmaceuticals, chemicals, glass coatings, dental composites, pigment, coatings, adhesives,

sealants, and foods. Union Ink uses its three-roll mills to pulverize powdered ink so that it can be mixed smoothly and completely into a liquid. Id. at 30.

Union Ink produces several colors of ink. The different colors of powdered ink must be kept separate, so mill operators are required to periodically clean their machines so that a new color of ink can be processed. Id. at 83-84. To clean the machine, the mill operators pour a solvent onto the mill rollers and wipe them down with a rag while the mill is running at its slowest rate of speed. Id. at 37.

In the evening of September 27, 2007, Reyes began to clean his ink mill so that the color could be changed. While cleaning, the rag in Reyes's hand became caught in the "nip point" of the mill where two of its three rollers came together. Id. at 61. In an instant, Reyes's hand was pulled into the machine, badly crushing his thumb. Id. at 81. Unable to stop the mill, Reyes grabbed a nearby tube with his other hand and pulled himself free. Id. at 61. His supervisor, Steve Pabon, called 911 and Reyes was taken by ambulance to receive treatment for his injuries. (Littleford Ex. B, 13).

The ink mill involved in the accident is very old. While no conclusive documentary evidence has been found, it appears to have been manufactured by J.H. Day Company ("J.H. Day") some time prior to 1950. (Littleford Ex. E, 19). Defendant Littleford is the current successor in interest to J.H. Day, though it has no records of the ink mill's production or initial sale. Id. at 51-53.

As originally manufactured, the ink mill had no safety devices that would prevent a worker's hands from becoming accidentally trapped in the nip point between the mill's rollers. Later models of ink mills manufactured by J.H. Day included additional safety features to prevent this sort of accident. Id. at 28. These features include removable nip point guards, also

3

called "wash up sticks" which are triangular wedges placed above the rollers during cleaning. The wash up sticks prevent any objects from becoming caught in the nip point. Other safety features include various forms of rapid shutdown devices such as "mushroom buttons" and "airplane cords" which permit a worker to quickly halt the machine if an accident occurs.

Defendant Keith Machinery purchased the ink mill from Warren Paint & Color Company ("Warren Paint") in 1989. (Littleford Ex. D, 10). Keith Machinery refurbished the mill, brought it into compliance with all applicable OSHA and ANSI requirements, attached warning placards, and then resold it to Union Ink in 1995. Id. at 42, 129. In particular, Keith Machinery claims to have installed rapid shutdown switches on the machine and provided wash up sticks for use in cleaning the rollers. Id. at 41. At the same time, Keith Machinery claims to have supplied Union Ink with a copy of the J.H. Day product manual associated with the device and the applicable ANSI standards. (Littleford Ex. C). Defendant Littleford also claims to have sent Union Ink copies of the updated ANSI standards. (Littleford Ex. E, 54-55).

Keith Machinery inspected the ink mill three times after the sale, in 2003, 2006, and 2007. (Littleford Ex. D at Ex. 6). In 2003 and 2006, the inspection reports note that the wash up stick is missing and needs to be replaced to comply with ANSI guidelines. Id. The 2007 report indicates that only routine maintenance is required. Id. Plaintiff admits that the use of a wash up stick would have prevented the accident, but contends that he was never instructed to use a wash up stick while cleaning the ink mill and that a wash up stick was never available for him to use. (Littleford Ex. A, 42-43). Plaintiff argues that Littleford and Keith Machinery are each strictly liable as manufacturers and sellers of dangerously defective machinery.

On the basis of these facts, Defendants each move for summary judgment.

4

## II.     DISCUSSION

**A.     Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

In a motion for summary judgment, the moving party has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine issue of fact exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact and do not merely suggest "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

A party must support its assertions that a fact cannot be or is genuinely disputed "by (A) citing to particular parts of materials in the record…or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1). If a party "fails to properly

5

support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…(2) consider the fact undisputed for purposes of the motion…" Rule 56(e).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but, rather, to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate.

The Court will apply this standard in examining each of the allegations of Plaintiff's amended complaint.

### B.     Product Defect

As a threshold matter, Plaintiff's complaint is threadbare, highly duplicative and conclusory. As such, the Court is forced to speculate to an unreasonable extent regarding the nature of each count. The first, third, and seventh counts of the complaint appear to sound in various forms of strict products liability. The first and seventh counts allege defective design, and the third count alleges a failure to warn.

Under New Jersey law, "[a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it… b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner." N.J.S.A. § 2A:58C-2. Either species of product liability claim requires a showing that the defective design or failure to warn was the cause of the plaintiff's injuries Lewis v. American

Cyanamid Co., 155 N.J. 544, 563 (1998) ("As with tort claims generally, causation is an element of a design-defect claim."); Cruz-Mendez v. ISU/Insurance Services of San Francisco, 156 N.J. 556, 575 (1999) ("Even in a strict-liability action, a plaintiff must prove causation.").[1] Causation has two elements, that: (1) defendant's conduct was the factual or "but for" cause of plaintiff's injury, and (2) defendant's conduct was the proximate cause of the plaintiff's injury. Id. Every occurrence related to an event such that, but for the event, the occurrence probably would not have happened is a factual or "but for" cause of an injury. Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996). In contrast, a proximate cause is "'a cause which necessarily set the other causes in motion and was a substantial factor in bringing the accident about' and… 'naturally and probably led to and might have been expected to produce the accident complained of.'" Reynolds v. Gonzalez, 172 N.J. 266, 285 (N.J. 2002) quoting Scafidi v. Seiler, 119 N.J. 93, 101 (1990). Put another way, a proximate cause is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Kasper v. Board of Trustees of Teachers' Pension and Annuity Fund, 164 N.J. 564, 592 (2000).

"Ordinarily, the jury considers issues of proximate cause." Shelcusky v. Garjulio, 172 N.J. 185, 206 (2002). However that rule is "far from absolute." Id. Under certain circumstances, "the court may conclude as a matter of law that defendants' actions were not the proximate cause of the plaintiff's injury." Port Authority of New York and New Jersey v. Arcadian Corp., 189 F.3d 305, 318 (3d Cir. 1999). Indeed "[t]he New Jersey courts have on many occasions held that proximate causation did not exist as a matter of law." Id. (collecting cases).

---

[1] See also J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability and Litigation, § 4.01, 127 (rev. ed. 2000) (absent "proof of cause, there is no connection between the injury complained of and the fault of anyone.").

7

Defendants argue that Plaintiff's injuries were not caused by any defect in the design of the ink mill or the warnings provided with it. Defendants point to testimony and documents from Keith Machinery demonstrating that wash up sticks and warning placards were provided to Union Ink. (Littleford Ex. D, 23-25, 41, Ex. 15). Defendants argue that Union Ink's failure to provide the safety devices and warnings to their employees was an "intervening, superseding cause of [the] accident" which "relieves the manufacturer from liability for product defect." (Littleford Br. 11). In support of this argument, Defendants cite to Brown v. United States Stove Co., 98 N.J. 155 (1984).

In Brown, a plaintiff was savagely burned in a fire started by a free-standing space heater. The space heater had been modified by plaintiff's employer to remove its pilot light tube, thermocouple valve, and gas safety shut-off valve, each of which was an essential safety feature designed to prevent fires. The plaintiff claimed that the modifications were foreseeable and that the manufacturer of the device should be strictly liable for failing to make the product less vulnerable to unsafe modifications. The plaintiff also argued that the foreseeability of the modifications and the feasibility of alternative designs should be fact questions presented to the jury. The court disagreed, finding that there was a "powerful, if not ineluctable, inference that the subsequent course of misconduct was the independent cause of the accident" and that consequently "[i]t would not square with basic notions of sound public policy and overall fairness to conclude that a manufacturer should, under the[] circumstances, be held legally responsible for the accidental harm that resulted from the misconduct of others in the misuse of its product." Brown, 98 N.J. at 174-175.

But the facts of this case differ significantly from those in Brown. First, Plaintiff disputes whether safety features such as wash up sticks were actually provided to Union Ink. Plaintiff has

8

introduced deposition testimony from Ronnie Peterson, a fellow employee, that the ink mill which injured Plaintiff was never outfitted with a wash up stick prior to the day of the accident. (Pl. Ex. C, 15:24-16:3). Plaintiff has also introduced testimony from himself and other employees that the mills were not equipped with safety devices in the months and years before the accident. See e.g., Pl. Ex. E, 10:2-9 (Navarette Deposition), Pl. Ex. G, 13:19-14:6 (Calderone Deposition). These employees worked at Union Ink at the same time as the Keith Machinery ANSI compliance inspections and their testimony is at odds with the evidence upon which Defendants rely to argue that the equipment was delivered. (Littleford Ex. D at Ex. 6). This discrepancy creates a factual dispute as to whether the accident was attributable to Union Ink, or to Littleford and Keith Machinery's failure to provide Union Ink with proper safety equipment. Faced with such conflicting evidence, summary judgment is inappropriate. Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 172 (3d Cir. 2001) ("because we have conflicting evidence before us, we cannot sustain the grant of summary judgment"); See also Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 272 (3d Cir. 2007) (on a motion for summary judgment, "when there is conflicting testimony the court may [not] accept the testimony of one witness, even if a party, rather than another.").

  Second, even if Union Ink bears substantial responsibility for the accident, Defendants may still be liable. A products liability plaintiff need not show that the design defect or failure to warn was the sole proximate cause of his or her injuries, merely that it was a "substantial contributing factor." Perez v. Wyeth Laboratories Inc., 161 N.J. 1, 27 (1999) ("A proximate cause need not be the sole cause of harm. It suffices if it is a substantial contributing factor to the harm suffered."). The existence of other concurrent causes, such as Union Ink's negligence and dangerously deficient training, is not dispositive of Plaintiff's claim.

9

Third, Defendants could still be liable for Plaintiff's injuries even if Union Ink's conduct was the sole cause of the accident. Unlike the employer in <u>Brown</u>, Union Ink did not modify the ink press to remove substantial safety features; at best it is accused of failing to properly implement supplemental safety features provided by a reseller. A jury might reasonably hold that the failure of an employer to implement these features was reasonably foreseeable and justified an alternative design. Plaintiff's expert has suggested several possible alternatives. They include nip point guards that are permanently attached to the device and other features such as manual roll rotation or a "slow roll" cleaning motor are installed. (Pl. Ex. A, 9, 15).

Last, with respect to the claim for failure to warn, Defendants have not demonstrated that the warnings allegedly provided to Union Ink were adequate as a matter of law. Under New Jersey Law, a seller is obligated to provide "an adequate warning or instruction" which is "one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product…." N.J.S.A. 2A:58C-4. Whether a warning is sufficient to meet this standard is ordinarily "one for a jury to resolve." <u>Banner v. Hoffmann-La Roche Inc.</u>, 383 N.J. Super. 364, 378 (App. Div. 2006) <u>cert</u>. <u>denied</u> 190 N.J. 393 (2007). While they cite to warnings provided to Union Ink, Defendants have made no argument that would justify removing the adequacy of the warnings from the auspices of the jury.

Defendants have introduced substantial evidence of their efforts to bring Union Ink into ANSI compliance. Indeed, Defendants may have done all that could be expected of them to prevent Plaintiff's injury. However the disputed fact issues which remain prevent Defendants from receiving judgment as a matter of law.

### C.     Negligence and Breach of Implied Warranty

Count Two of Plaintiff's complaint alleges damages resulting from the negligence of Littleford and Keith Machinery. Counts Four and Six allege breach of an implied warranty. Defendant argues in its brief that these causes of action are subsumed by New Jersey's Product Liability Act, N.J.S.A. 2A:58C-1 *et seq*. (Littleford Br. 13). Plaintiff does not address this argument in its briefs.

Pursuant to the Product Liability Act, a manufacturer or seller may be held liable for injuries related to a defective product:

> ***only if*** the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.
>
> N.J.S.A. 2A:58C-2 (emphasis added).

Cases interpreting the Act have held that common law negligence or breach of implied warranty actions involving dangerous products are only cognizable if brought under the framework of the Act. Tirrell v. Navistar Intern., Inc., 248 N.J. Super. 390, 398 (App. Div. 1991) ("it is clear that common-law actions for negligence or breach of warranties (except express warranties) are subsumed within the new statutory cause of action, if the claimant and harm also fall within the definitional limitations of section 1.") cert. denied, 126 N.J. 390 (1991); Repola v. Morbark Industries, Inc., 934 F.2d 483, 492 (3d Cir. 1991) ("§ 2A:58C-2, which imposes liability on a manufacturer or seller 'only if a claimant proves' the elements of the statutory action, and which brings within the statute all claims for damage or injury caused by a product (excluding those caused by breach of express warranty) 'irrespective of the theory underlying the claim,' effectively creates an exclusive statutory cause of action for claims falling within its purview").

Since Plaintiff has already alleged violations of the Act, his additional negligence and implied warranty counts are either duplicative or contrary to law. Counts Two, Four, and Six of Plaintiff's complaint will be DISMISSED.

### D.      Breach of Express Warranty

Count Five of Plaintiff's complaint alleges breach of an express warranty made by Defendants to Reyes. No evidence has been introduced suggesting that any express warranty was ever made to Plaintiff. Indeed, no evidence suggests any communication by either Defendant with Reyes prior to the accident. As Littleford points out in its brief, the ink mill involved in the accident was manufactured 32 years before Plaintiff was born. (Littleford Br. 14). Count Five lacks any conceivable factual support and will be DISMISSED.

### III. CONCLUSION

For the reasons set forth above, Defendants' motions are GRANTED as to the negligence and breach of warranty claims. Counts Two, Four, Five, and Six of Plaintiff's complaint are DISMISSED. Defendants' motions are otherwise DENIED.

s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: June 8, 2011