**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| RAMON REYES, | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| KEITH MACHINERY CORP., et al. | NO. 2:09-cv-05309-DRD-MAS |
| Defendants. | |

**JOINT PROPOSED FINAL PRETRIAL ORDER**

1.  **JURISDICTION** (Set forth specifically)

    This Court has jurisdiction pursuant to 28 U.S.C. 1332(a)(1).

2.  **PENDING/CONTEMPLATED MOTIONS** (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar.  Also set forth the nature of the motion and the return date.  If the court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position.)

    Defendants J.H. Day and Keith Machinery Corp. ("KMC") have no pending or contemplated motions at this time.  Any pretrial motions will be submitted in accordance with the deadlines set by the court at the upcoming pretrial conference.

    Plaintiff, Ramon Reyes has no pending or contemplative motions at this time. All pre-trial motions will be submitted in accordance with the deadlines set by the court at the upcoming pre-trial conference.

3.  **STIPULATIONS OF FACTS** (Set forth in narrative form a comprehensive listing of all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties.)

    This product liability/negligence matter arises out of personal injuries sustained by plaintiff on September 27, 2007, when his hand became caught in the in-running nip-point of a three roll mill while he was cleaning the machine during the course and scope of his employment for Union Ink.

    The mill was manufactured by J.H. Day Co., an entity that no longer exists.  Pursuant to this court's Stipulation and Order, defendant Littleford is the successor-in-interest to J.H. Day Co., as a matter of law, and shall be treated as the manufacturer at the time of trial.  Littleford received records, including design drawings, from J.H. Day, and continues to maintain these

1

files.  However, Littleford has no design records for this particular ink mill and no records of exactly when or where the ink mill was initially sold.  In addition, Littleford stopped manufacturing ink mills like the one used by plaintiff in 1992.

KMC is a broker and seller of various equipment including, three roll mills.  KMC also manufactures three roll mills.  *KMC objects to the inclusion of this statement as it is not relevant.* However, KMC had no involvement whatsoever in the original design and manufacture of the subject mill.  KMC obtained the subject ink mill, used, in 1989 from Warren Paint & Color Company in Nashville, Tennessee.  It subsequently sold the mill to Union on April 13, 1995.  At the time KMC sold the mill to Union Ink, it complied with the applicable standard, ANSI B177.1.

Plaintiff Ramon Reyes was born in 1982, and in 2004, began working for Union Ink, which makes ink for clothing and signs.  Plaintiff's first job at Union Ink involved packing ink from large tanks into smaller drums.  He then began working as a machine operator in 2007, approximately six to eight months before his accident.  For about one to two months before he became a machine operator, Plaintiff received on-the-job training, with another, more experienced Union Ink employee, including learning how to operate, maintain, and clean an ink mill.

The subject mill is sometimes identified as "mill number 2" or by KMC serial # 14729 throughout the record.  Plaintiff's accident occurred during his regular shift at Union Ink. Plaintiff was cleaning the mill when his rag became caught in the in-running nip point and his gloved hand was partially pulled into the nip.

4.     **PLAINTIFF'S CONTESTED FACTS** (Stated separately for each defendant.  Proof shall be limited at trial to the matters set forth below.  Failure to set forth any matter shall be deemed a waiver thereof.)

    A.     Plaintiff intends to prove the following contested facts with regard to liability:

        1.     At the time the subject three roll mill was designed and manufactured, it was required that operators had to clean the rolls while the mill was operating.

        2.     As originally designed and manufactured at the surface area where the feed roll and the center roll come together, there existed a pinch point that could cause serious crushing injuries to the hands of an operator applying hand pressure through a rag against the rolls during cleaning of the rolls.

        3.     As originally designed and manufactured, the three roll mill had no safety devices or controls to prevent a worker's hands from becoming accidently trapped in the nip point between the nip's rollers.

        4.     At the time the mill was manufactured, the hazard of a worker's hands becoming crushed between the nip points of the feed roll and center roll was foreseeable.

2

5.      At the time the mill was designed and manufactured, there existed feasible design alternatives which if used, would prevent workers from being injured by this hazard.

6.      At the time the manufacturer placed the three roll mill into the stream of commerce, there were no instructions or warnings on the three roll mill concerning any hazards in violation of the manufacturer's duty to provide adequate warnings and instructions where the foreseeable and intended use of the machine could cause serious injuries to a user.

7.      At the time the manufacturer placed the three roll mill into the stream of commerce, there were no warnings in any instruction manual or other literature provided to the downstream user about the use of any type of nip point guarding when cleaning the mill in violation of the duty to provide adequate warnings and instructions concerning foreseeable hazards.

8.      At the time the three roll mill was placed into the stream of commerce by the defendant, Keith Machinery and sold to plaintiff's employer, Union Ink in 1995, the mill had no safety devices or controls that would prevent a worker's hands from being accidently trapped in the nip point between the feed roll and center roll.

9.      At the time the three roll mill was placed into the stream of commerce by defendant, Keith Machinery and sold to plaintiff's employer, Union Ink in 1995, defendant Keith knew that workers would be cleaning the mill by applying a rag to the surface of rotating rolls which contained a pinch point that could cause serious injury to workers.

10.     At the time the three roll mill was placed into the stream of commerce by the defendant Keith Machinery and sold to plaintiff's employer, Union Ink, there existed feasible design alternatives that would prevent a worker's hands from being trapped between the pinch point.

11.     A design alternative which existed both at the time of the original sale by JH Day Co. and at the time of sale by Union Ink in 1995, consisted of a manual roll rotation which would enable the operators to reach in and clean the entire surface of each roll without being exposed to an in-running nip point hazard.

12.     At the time the mill was sold by Keith Machinery to Union Ink, the manual roll rotation feature was offered as an option by defendant, Keith Machinery which did not add a significant cost to the price of the mill.

13.     At the time the three roll mill was sold by Keith Machinery to plaintiff's employer, Union Ink in 1995, a second alternative to eliminate the hazard consisted of an auxiliary motor with a "slow roll" speed for clean up mode which was also feasible and neither provided as an option or as standard equipment by Keith Machinery in the sale to Union Ink.

14.    At the time the three roll mill was sold by Keith Machinery to plaintiff's employer, Union Ink in 1995, it was feasible to provide a permanently affixed nip point guard known as a "always in" guard which would have eliminated the hazard of a worker having his hands trapped between the feed roll and center roll during cleaning operations.

15.    Neither at the time of the sale by Keith Machinery, nor at any subsequent service and inspections performed in 2003, 2006, and 2007 was any type of V shaped guard known as a wash up stick provided for use with the mill.

16.    Plaintiff contends that to the extent any type of V shaped guard or wash up stick was provided by defendant, Keith Machinery to plaintiff's employer, Union Ink prior to plaintiff's accident on August 9, 2007, it was inadequate for guarding the hazard because it was not mounted to the machine, and was subject to wear and tear rendering it probable that it would not be available for use.

17.    At the time of the sale of the mill by Keith Machinery to plaintiff's employer Union Ink in 1995, the mill failed to incorporate an emergency stop cable which would have eliminated or ameliorated the hazard of injuries caused by a pinch point.

18.    Plaintiff contends that no safety placard was provided by Keith Machinery to plaintiff's employer, Union Ink for application to the three roll mill or if one was provided, defendant Keith Machinery failed to insure it was present when it provided inspection and service in 2003, 2006, and 2007. Plaintiff further contends that to the extent the placard was provided, it did not conform with the requirements of ANSI Z535 because it did not include a signal word and symbol commensurate with the severity of the hazard and a message panel that clearly identifies hazards, inform operators about how to avoid hazard exposure, and warn of the consequences of not following instructions.

19.    Plaintiff contends that any and all instruction manuals provided by Keith Machinery to plaintiff's employer, Union Ink concerning the subject ink mill were inadequate and not in compliance with its duty to provide adequate warnings and instructions about the dangers in the foreseeable use of the product.

20.    Plaintiff contends that both defendants placed into the stream of commerce a defective product which was not reasonably fit, suitable, and safe for their intended or foreseeable uses  which were proximate causes of plaintiff's injuries on September 27, 2007 independent of any intervening actions.

4

Plaintiff intends to prove the various facts and opinions set forth in the report of Thomas P. Cocchiola, P.E.

B.    Plaintiff intends to prove the following contested facts with regard to damages: (This must include each item of damages, the amount of each item, the factual basis for each item and, if punitive damages are claimed, the facts upon which plaintiff will rely to establish punitive damages.)

1.    Plaintiff contends he sustained a crush injury of the right thumb with open fracture of the interphalangel joint, and injury to the extensor tendon requiring open reduction with internal fixation of interphalangel joint with k wire and debridement and subsequent repeat debridement with full thickness skin graft to the right thumb from the iliac crest skin and subsequent release of the right first web space contracture with reconstruction with residuals of scarification of the skin over the iliac crest and tenosynovitis of the right thumb with loss of range of motion, power, and function in his right dominant hand.

Plaintiff had three surgical procedures on September 27, 2007, November 15, 2007, and June 19, 2008.

Plaintiff contends that he sustained lost wages in the approximate amount of $25,000.00.

Plaintiff contends he sustained consequential damages consisting of pain, suffering, disability, impairment, and loss of enjoyment of life.

Plaintiff contends he sustained $55,600.02 in medical expenses.

5.    **DEFENDANTS' CONTESTED FACTS** (Stated separately for each plaintiff.  Proof shall be limited at trial to the matters set forth below.  Failure to set forth any matter shall be deemed a waiver thereof.)

A.    Defendants intend to prove the following contested facts with regard to liability:

1.    Defendants intend to prove that plaintiff was not using a nip point guard required by OSHA and ANSI B177.1 and his hands were above the center line of the roller also in violation of OSHA, ANSI B177.1, and the machine's directions.   Plaintiff's supervisor, Steven Pabon, investigated the accident, and determined that plaintiff's failure to use a nip point guard caused the accident.

2.    Defendants intend to prove that ANSI B177.1 identifies the safety standards for three roll mills including, the proper cleaning a/k/a wash-up procedure.  This standard was first promulgated in 1975 and is revised from time to time.  The 1997 version applied at the time of the accident.  In addition, ANSI B177.1 has been incorporated by reference into OSHA 1910.212.  The federal regulation makes clear that responsibility for

following the mandated wash-up procedure rests <u>with the employer</u> – Union Ink.. ANSI B177.1 requires, among other things, the use of nip point guards during the wash-up procedure. A nip point guard is a V-shaped wooden, plastic, or metal stick, which sits on the in-running nip point created by two rollers, in order to eliminate the nip point hazard.

3. Defendants intend to prove that at the time Union Ink purchased the mill from KMC, its purchase order stated, "Equipment must meet all OSHA, ANSI and other current industry standards." As sold, the mill met these requirements including, KMC's supply of an ANSI-compliant wash-up stick.

4. KMC also supplied to Union Ink a copy of the J.H. Day Co. product manual and a copy of the ANSI B177.1 standard applicable at the time of the sale. The product manual supplied by KMC advised that "THE <u>NIP GUARD SHALL BE USED DURING CLEANING</u>… FAILURE TO USE THE NIP POINT GUARD DURING CLEANING MAY RESULT IN SERIOUS PERSONAL INJURY." Furthermore, KMC affixed a warning placard to the machine. In addition to containing a diagram of the nip point, the placard is bright yellow and black and contains the following warnings:

- READ AND UNDERSTAND OPERATORS MANUAL BEFORE OPERATING EQUIPMENT.

- KEEP AREA CLEAR OF TRIPPING HAZARDS.

- DO NOT TOUCH ROLLS WHEN IN MOTION.

- BE CAREFUL OF SHARP BLADE IN APRON.

- KEEP GUARDS AND SAFETIES IN PLACE.

- READ RECOMMENDED WASH UP INSTRUCTIONS BEFORE CLEANING MILLS.

- KEEP WASH UP STICK AT MILL AND BETWEEN ROLLS DURING ALL CLEAN UP OPERATIONS.

5. Defendants intend to prove that at least three times in the years between Union Ink's purchase of the ink mill and plaintiff's accident, KMC inspected Union Ink's ink mills, and provided written inspection reports. In the inspection reports, KMC identified ink mills that were missing nip point guards, and recommended replacing those guards. KMC noted in its January 24, 2006 inspection report that mill number 2, KMC #14729, "needs a wash up stick. This mill does not conform to ANSI regulations." By January 16, 2007, however, the KMC inspection showed that the same

ink mill needed only "minor service and preventive maintenance"—the inspection report did not note any need for a wash up stick, or identify any violations of the ANSI standard.

6.  Defendants intend to prove that despite the fact that Littleford stopped manufacturing ink mills three years before Union Ink purchased the ink mill from KMC, Littleford notified known customers—including Union Ink—about updates to ANSI and OSHA standards.  Even though Littleford did not sell the ink mill to Union Ink, it was aware that Union Ink used ink mills in its facility, because it was a customer for replacement parts.  Littleford regularly notified customers of updates to OSHA and ANSI standards, by sending letters to known users of ink mills.  Union Ink had purchased replacement parts directly from Littleford, and therefore also received these notifications.  From time to time, Littleford also offered to retrofit ink mills with nip point guards for its customers, and some customers did accept these offers.

7.  Defendants intend to prove that plaintiff's accident was not proximately caused by any failure to warn or any defect in the design or manufacture of the ink mill.

8.  Defendants intend to prove that the ink mill was state of the art at the time it was manufactured.

9.  Defendants intend to prove that the warnings provided to plaintiff's employer were adequate to prevent plaintiff's injury if he had followed them.

10.  Defendants intend to prove that the mill was OSHA and ANSI-compliant at the time it was sold.

11.  Defendants intend to prove that plaintiff's failure to use the wash-up stick and/or Union Ink's failure to properly train and/or supervise its employees was the sole proximate cause of the accident.

12.  Defendants intend to prove that the incident would not have occurred had plaintiff used a nip point guard.

13.  Defendants intend to prove that plaintiff's employer is responsible for ensuring that the proper wash-up procedure is followed and that this procedure was not followed on the date of the accident.

14.  Defendants intend to prove that plaintiff and/or his employer failed to follow the wash-up procedure set forth in ANSI B177.1 and that had this procedure been followed, the accident would not have occurred.

15.  Defendants intend to prove the various facts and opinions set forth in the reports of Peter Schwalje, P.E. and Clyde Richard, Ph.D., P.E.

    B.    Defendants intend to prove the following contested facts with regard to damages: (This statement must include the factual basis for each defense against the plaintiff's claims for damages)

        1.    Defendants intend to prove that plaintiff has substantially recovered from his injuries and is able to work.

        2.    Defendants intend to prove that plaintiff failed to mitigate his damages.

6.    **PLAINTIFF'S WITNESSES** (Aside from those called for impeachment purposes, only the witnesses and rebuttal witnesses whose names and addresses are listed below will be permitted to testify at trial.)

    A.    On liability plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

        1.    Ramon Reyes, plaintiff.

        2.    Ronnie Petersen.  Mr. Petersen will testify that he was a co-worker of plaintiff employed by Union Ink for 23 years.  Mr. Petersen will testify that he was familiar with the subject three roll mill having worked on it on several occasions and that this machine never had any type of wash up stick or other safety device to use while cleaning before the date of plaintiff's accident, September 27, 2007.

        3.    Jose Navarette. Mr. Navarette will testify that he is a co-worker of plaintiff and has been employed by Union Ink for the last seven years.  Mr. Navarette will testify that he saw the aftermath of plaintiff's accident.  Mr. Navarette will also testify that he worked on this machine, the subject three roll mill, as well as an adjacent one identified as number 3 and neither one of them ever had a wash up stick to use while he was cleaning it.

        4.    Gregory Calderon.  Mr. Calderon will testify that he is a co-worker of plaintiff and has worked at Union Ink for the last 8 years.  Mr. Calderon will testify that he worked on the subject ink mill. Mr. Calderon will further testify that this three roll mill never had a wash up stick for use with it while cleaning until after plaintiff's accident.  Mr. Calderon will further testify that he was never told to use any type of wash up stick while cleaning the machine.

    B.    On damages plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

        1.    Dr. Sydney Rabinowitz.  Dr. Rabinowitz will testify as to the nature, extent, causation, and permanency of plaintiff's injuries and describe the operations he performed.

2.      Dr. Vijaykumar Kulkarni.  Dr. Kulkarni will testify as to the permanent aspects of plaintiff's orthopedic disability as well as the nature, extent, and causation of injuries to the extent not covered by another witness.

3.      Dr. Cheryl Wong. Dr. Wong will testify as to the neurological and psychiatric components of plaintiff's injuries and the permanency of same.

C.      Defendants object to the following witnesses for the reasons stated:

Defendants do not object to plaintiff's proposed witnesses.  However, defendants reserve their right to object to the substance of their testimony at the time of trial.

7.      **DEFENDANTS' WITNESSES** (Aside from those called for impeachment purposes, only the witnesses and rebuttal witnesses whose names and addresses are listed below will be permitted to testify at trial.)

A.      On liability defendants intend to call the following witnesses who will testify in accordance with the following summaries:

1.      Ramon Reyes, as on cross.

2.      Steve Pabon, Union Ink.  Mr. Pabon will testify that, in accordance with his deposition testimony, at the time of plaintiff's accident, Union Ink had nip point guards available for use by its employees on this machine. Mr. Pabon will testify that Union Ink trained its employees on the use of nip point guards.  Mr. Pabon will also testify that plaintiff's accident would not have happened if he had been using a nip point guard, as well as other relevant matters.

3.      Jonathan D. Hatz, Keith Machinery Corp.  Mr. Hatz will testify that, in accordance with his deposition testimony, at the time of the sale of the mill to Union Ink in 1995, KMC ensured that the mill complied with the applicable safety standard, ANSI B177.1. Mr. Hatz will testify that he is a member of the ANSI committee responsible for promulgating this standard and has knowledge as to the standards requirements.  Mr. Hatz will testify that KMC supplied Union Ink with an ANSI-compliant wash-up stick and installed ANSI-compliant mushroom stop buttons on the mill. He will also testify that KMC supplied a copy of the product manual and ANSI B177.1 standard to Union Ink.   Additionally, Mr. Hatz will testify regarding the various inspections performed by KMC.  Mr. Hatz may also testify regarding the various features offered to Union Ink at the time of sale, as well as other relevant matters.

4.      Richard Condon, Keith Machinery Corp.  Mr. Condon will testify regarding the various inspections performed by KMC, meetings with Union Ink, as well as other relevant matters.

     5.     Robert Schlichter, Littleford.  Mr. Schlichter will testify regarding Littleford's knowledge as to the design and manufacture of the mill, the supply of information regarding ANSI and OSHA to its customers, its ongoing relationship with Union Ink and the supply of product manuals to its customer, as well as other relevant matters.

     6.     J.H. Day Corporate representative for authentication of records, if necessary.

B.     On damages defendants intend to call the following witnesses who will testify in accordance with the following summaries:

[None]

C.     Plaintiff objects to the following witnesses for the reasons stated:

At this time, plaintiff has no objection to any of the witnesses named by the defendants, but reserves the right to object to any of the content of the testimony at the time of trial.

8.    **EXPERT WITNESSES** (No expert shall be permitted to testify at Trial unless listed below and unless a summary of his qualifications and a copy of his report are attached hereto. Said summary shall be read into the record at the time he takes the stand, and no opposing counsel shall be permitted to question his expert qualifications unless the basis of objection is set forth herein.)

A.     Plaintiff's expert witnesses are:

Thomas Cocchiola, P.E.
Dr. Sydney Rabinowitz
Dr. Vijaykumar Kulkarni
Dr. Cheryl Wong

B.     Defendants' objections to the qualifications of plaintiff's experts are:

The J.H. Day Defendants and KMC have no objection to the qualifications of plaintiff's expert.

C.     Defendants' expert witnesses are:

Peter J. Schwalje, P.E. (J.H. Day Defendants)

Clyde Richard, Ph.D., P.E. (Keith Machinery Corp.)

D.     Plaintiff's objections to the qualifications of defendants' experts are:

Plaintiff has no objections to the qualification of defendants' experts.

9.    **PLAINTIFF'S DEPOSITIONS** (List, by page and line, all deposition testimony to be offered into evidence.  All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant.  Deposition testimony to be used solely for impeachment purposes need not be listed.)

A.    On liability plaintiff intends to read into evidence the following:

The deposition testimony of Robert Schlichter, 11/9/10

| Page | Line | to | Page | Line |
|------|------|------|------|------|
| 4 | 4 | | 4 | 7 |
| 6 | 6 | | 7 | 7 |
| 9 | 4 | | 9 | 11 |
| 10 | 3 | | 11 | 12 |
| 13 | 10 | | 13 | 15 |
| 29 | 23 | | 34 | 4 |
| 43 | 1 | | 43 | 13 |
| 45 | 2 | | 45 | 6 |
| 49 | 22 | | 50 | 8 |

The deposition testimony of Jonathan D. Hatz, 2/17/11

| Page | Line | to | Page | Line |
|------|------|------|------|------|
| 4 | 4 | | 4 | 9 |
| 5 | 24 | | 6 | 18 |
| 8 | 5 | | 9 | 4 |
| 10 | 24 | | 11 | 9 |
| 19 | 5 | | 20 | 2 |
| 20 | 17 | | 20 | 24 |
| 28 | 6 | | 29 | 2 |
| 29 | 6 | | 30 | 22 |
| 31 | 15 | | 31 | 19 |
| 35 | 3 | | 35 | 21 |
| 37 | 8 | | 38 | 5 |
| 69 | 9 | | 69 | 23 |
| 71 | 24 | | 72 | 22 |
| 121 | 18 | | 122 | 19 |
| 130 | 2 | | 131 | 16 |

B.    On damages plaintiff intends to read into evidence the following:

None.

C.    Defendants object to the deposition testimony set forth above for the reasons stated

11

Testimony of Robert Schlicter

>Defendants reserve the right in accordance with FRCP 32(a)(1) and 32(b) and the Federal Rules of Evidence to raise any objection regarding the admissibility of the cited testimony at the time of trial.  In addition, in accordance with FRCP 32(a)(6) defendants reserve their right to require plaintiff to offer into evidence any and all other parts of the deposition testimony that "in fairness should be considered with the part introduced."

Testimony of Jon Hatz

>Defendants reserve the right in accordance with FRCP 32(a)(1) and 32(b) and the Federal Rules of Evidence to raise any objection regarding the admissibility of the cited testimony at the time of trial.  In addition, in accordance with FRCP 32(a)(6) defendants reserve their right to require plaintiff to offer into evidence any and all other parts of the deposition testimony that "in fairness should be considered with the part introduced."

10.   **DEFENDANTS' DEPOSITIONS** (List, by page and line, all deposition testimony to be offered into evidence.  All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant.  Deposition testimony to be used solely for impeachment purposes need not be listed.)

>A.   On liability defendants intend to read into evidence the following:

The deposition testimony of Robert Schlichter:

Page 10, lines 8-25; page 11, lines 1-7.
Page 16, lines 11-19.
Page 17, lines 12-19.
Page 19, lines 20-25; page 20, lines 1-7.
Page 21, lines 20-25.
Page 27, lines 18-25; page 28, lines 1-25.
Page 34, lines 12-19.
Page 35, lines 14-25; page 36, lines 1-15.
Page 54, lines 20-25; page 55, lines 1-25; page 56, lines 1-21.
Page 57, lines 3-8, 17-25.
Page 58, lines 10-25; page 59, lines 1-6.
Page 70, lines 11-25; page 71, lines 1-2.

>B.   On damages defendants intend to read into evidence the following:

[None]

>C.   Plaintiff objects to the deposition testimony set forth above for the reasons stated.

>Plaintiff objects to the reading of any testimony by Robert Schlichter beginning with page 27 and extending to the balance to page 70 as such readings constitute

improper use of a deposition pursuant to F.R.C.P. 32 (a)(1).  All of the readings on those pages relate to testimony that is adverse to the plaintiff.  See also F.R.C.P. 32(a)(3) concerning use of depositions of a party.

11.    **PLAINTIFF'S EXHIBITS**

(Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial.  Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived.  All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made.)

A.  Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

**Plaintiff, Ramon Reyes' Exhibit**

| Exhibit Number | Description |
|---|---|
| 1-18 | Photographs of ink mill taken by Michael G. Natoli, P.E. |
| 19 | Disc of photographs taken by Thomas P. Cocchiola, P.E. |
| 20 | Disc of video of operation of machine taken by Thomas P. Cocchiola, P.E. |
| 21 | ANSI B 177.1-2007 standard. |
| 22 | Drawing by John Hatz (Listed as Hatz-5 at deposition of 2/17/11) |
| 23 | February 2003, Three Roll Mill Inspection Report  and related e-mail (previously marked for identification as Hatz 6 and 7 on 2/17/11) |
| 24 | January 2006, Three Roll Mill Inspection Report and related e-mail (previously marked for identification as Hatz 10 on 2/17/11) |
| 25 | January 2007, Three Roll Mill Inspection Report and related e-mail (previously marked for identification as Hatz 12 and Hatz 14 on 02/17/11) |
| 26 | Two instruction manuals provided in Keith Machinery's answers to interrogatories. |
| 27 | Plaintiff's paystubs dated 6/22/07 and 8/24/07. |
| 28, a-f | Injury photographs. |
| 29 | Depiction of always in guard exemplar. |
| 30 | Photograph of exemplar always in guard. |
| 31 | 25 pages of records and report of Dr. Sydney Rabinowitz. |
| 32 | Series of three x-rays of plaintiff's right hand. |
| 33 | Operative reports of 9/27/07, 11/15/07, and 6/19/08. |
| 33 | Hackensack Medical Center, Hospital records for admission of 9/27/07. |
| 34 | Admission records from Hackensack Medical Center, 11/15/07. |
| 35 | Admission records from Hackensack Medical Center, 6/19/08. |
| 36 | Workers Compensation lien. |

B.     Defendant objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection):

Defendants are not able to provide specific objections as to each exhibit because as of the time of submitting this Joint Pretrial Order, defendants were not in possession of plaintiff's proposed exhibits in violation of this court's Order.  Notwithstanding, defendants reserve their right to object to the admission of any of these exhibits based upon the Federal Rules of Evidence and the Federal Rules of Civil Procedure.  In addition, the following are particular objections based upon the descriptions provided.  Defendants are in no way waiving their right to amend and/or supplement these objections once they have had an opportunity to review proposed exhibits.

Exhibits 1-20:  Defendants are not in possession of the proposed photographs and video. Notwithstanding, defendants anticipate objecting based upon relevance, cumulative evidence, subsequent remedial measures, and undue prejudice.

Exhibit 21.  Defendants object based upon relevance.

Exhibit 22.  Defendants object as this court previously limited the purpose and scope as to the admissibility of this exhibit.  In particular, during the deposition of Mr. Hatz on February 17, 2011, this court ordered: "It is by no means an expert rendering.  It is by no means to rise to the level of being an expert submission.  And at no point will this drawing be offered for any purpose other than a document that aided and helped Mr. Hatz explain his explanation during a deposition.  I think that the drawing's ok for that purpose and that purpose alone."  (Hatz Dep. Tr. at p.87:3-17).  Furthermore, KMC objects to the admission of this drawing and Exhibit 29 based upon relevance, cumulative evidence and the best evidence rule.

Exhibit 28:   Defendants are not in possession of the proposed photographs. Notwithstanding, defendants anticipate objecting based upon relevance, undue prejudice, and cumulative evidence.

Exhibits 27, 29-36.  Defendants are not in possession of these records.  Notwithstanding, defendants anticipate objecting based upon relevance, undue prejudice, cumulative evidence, and failure to produce during discovery.

Defendants reserve their right to amend and/or supplement these objections up to and including the time of trial.

## 12.     DEFENDANTS' EXHIBITS

(Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial.  Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived.  All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made.)

A.     Defendants intend to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

14

**J.H. Day's Exhibits**

| Exhibit Number | Description |
|---|---|
| 1 | Wash up stick exemplar (in custody of Mike Kunsch) |
| 2 | Instruction Manual (Schlichter deposition exhibit P-2) |
| 3 | Responses of Defendants to Interrogatories (Schlichter deposition exhibit P-4) |
| 4 | ANSI B177.1-1975 standard (Bates No. LD000028-LD000030) |
| 5 | Invoice for sale of complete set of prints and instructions for 14 x 30 mill to Union Ink Co. (Bates No. LD000007) |
| 6 | Union Ink Accident Investigation Form (Pabon deposition exhibit 2) |
| 7 | Handwritten statement re accident (Pabon deposition exhibit 3) |
| 8 | Instruction manual provided to Union Ink by Keith Machinery (Keith Machinery's initial interrogatory responses, exhibit C) |
| 9 | Keith Machinery records of purchase of ink mill (Hatz deposition exhibit 1) |
| 10 | Keith Machinery records of sale of ink mill to Union Ink (Hatz deposition exhibit 2) |
| 11 | Keith Machinery "KMC Three Roll Mill Safety Class / Instruction Class" (Hatz deposition exhibit 3) |
| 12 | Handwritten work order and additional sale records from Keith Machinery (Hatz deposition exhibit 4) |
| 13 | Keith Machinery Three Roll Mill Inspection Report dated Feb. 20, 2003 (Hatz deposition exhibit 6) |
| 14 | Email from Jon Hatz to Danny Roberts, Union Ink, dated Dec. 16, 2005 (Hatz deposition exhibit 7) |
| 15 | Keith Machinery invoice dated 3/29/06 (Hatz deposition exhibit 9) |
| 16 | Email from Jon Hatz to Danny Roberts, Union Ink, dated April 23, 2006 (Hatz deposition exhibit 10) |
| 17 | Keith Machinery invoice dated 5/3/06 (Hatz deposition exhibit 11) |
| 18 | Keith Machinery Three Roll Mill Inspection Report dated January 2007 (Hatz deposition exhibit 12) |
| 19 | Keith Machinery invoice dated 1/18/07 (Hatz deposition exhibit 13) |
| 20 | Email from Jon Hatz to Gordon Faulkner, Union Ink, dated Feb. 14, 2007 (Hatz deposition exhibit 14) |
| 21 | Warning placard (Hatz deposition exhibit 15) |
| 22 | Keith Machinery video of cleaning procedure |
| 23 | Photographs of ink mill taken by Peter J. Schwalje |

**KMC's Exhibits**

| Exhibit Number | Description |
|---|---|
| 1 | Accident Investigation Form (previously marked for identification as S. Pabon 2 on 12/15/10) |

| Exhibit Number | Description |
|---|---|
| 2 | Handwritten statement of Steven Pabon, dated 09/27/07 (previously marked for identification as S. Pabon 3 on 12/15/10) |
| 3-49 | Various photographs |
| 50 | August 14, 2009, Video of Three Roll Mill Cleaning |
| 51 | Union Ink Safety Training Sign-in Sheet (previously marked for identification as Exhibit No. 8 on 10/08/10) |
| 52 | Union Ink Three Roll Mill Safe Cleaning Procedure |
| 53-58 | Wash-up stick (previously marked for identification as S. Pabon 1 on 12/15/10) and related Photographs |
| 59 | Caution Sign (previously marked for identification as Hatz 15 on 02/17/11) (physical sign may be produced at the time of trial) |
| 60 | Documents relating to purchase of mill by KMC from Warren Paint (previously marked for identification as Hatz 1 on 02/17/11) |
| 61 | Documents relating to purchase of mill by Union Ink from KMC (previously marked for identification as Hatz 2 and Hatz 4 on 02/17/11) |
| 62 | KMC Three Roll Mill Safety Class/Instruction Class (previously marked for identification as Hatz 3 on 02/17/11) |
| 63 | February 2003, Three Roll Mill Inspection Report and related e-mail (previously marked for identification as Hatz 6 and Hatz 7 on 02/17/11) |
| 64 | January 2006, Three Roll Mill Inspection Report and related e-mail (previously marked for identification as Hatz 10 on 02/17/11) |
| 65 | January 2007, Three Roll Mill Inspection Report and related e-mail (previously marked for identification as Hatz 12 and Hatz 14 on 02/17/11) |
| 66 | Email from KMC to Union Ink re ANSI Safety Standards, dated January 25, 2007 |
| 67 | ANSI Standards – B177.1-1975, 1979, 1997 |
| 68 | Stipulation between KMC and Littleford, dated August 13, 2010 |
| 69 | Product Manuals |

B.      Plaintiff objects to the introduction of defendants' exhibits (set forth number of exhibit and grounds for objection):

JH Day Exhibits.

Exhibit 2, object to the extent this is not the manual supplied by the original manufacturer.

Exhibit 3, object to the admissibility of defendant's discovery.

Exhibit 6, object to statements attributable to witness, Pabon to the extent they are not relevant or constitute hearsay.

Exhibit 8, objection only insofar as there are multiple versions of the manual on the disc and plaintiff cannot consent to the admission in this format.

16

Exhibit 11, object on relevance grounds.

Exhibit 22, object to the admissibility of the video as this is unfairly prejudicial to plaintiff who never had an opportunity to view this video before his accident.

Exhibit 23, object to some of the photographs taken by Peter Schwalje, P.E. including but not limited to any photograph depicting warnings about use of a safety stick that was never authenticated in discovery, any photographs about the risk of injury to finger that were never authenticated in discovery in terms of time as to whether same existed before date of plaintiff's accident. Object to any photographs of warning stickers not properly authenticated as having relevance to the subject matter of this accident.  Object to the extent any photographs may be cumulative and other photographs depict safety photographs that may be irrelevant or cause confusion or the undue consumption of time and may be irrelevant.

Plaintiff objects to the introduction of defendant, Keith Machinery's exhibits as follows:

Exhibit 1, object as constituting hearsay.

Exhibit 2, object in part to inference a safety stick was available.

Exhibit 3-49, object insofar as photographs may be irrelevant or cumulative but not as to authenticity.

Exhibit 50, object as video is unfairly prejudicial to plaintiff who did not have an opportunity to view this before his accident.

Exhibit 51, object as being subsequent to the accident and therefore irrelevant.

Exhibit 52, object as being subsequent to the accident and therefore irrelevant.

Exhibit 53-58, object as to the extent that some photographs may be cumulative in nature.

Exhibit 59, plaintiff objects to the generic description of product manuals.

(COPIES OF EXHIBITS ARE TO BE MADE FOR OPPOSING COUNSEL, AND A BENCH BOOK OF EXHIBITS IS TO BE DELIVERED TO THE JUDGE AT THE START OF TRIAL. IF COUNSEL DESIRES TO DISPLAY EXHIBITS TO THE JURY, SUFFICIENT COPIES SHOULD BE AVAILABLE TO PROVIDE EACH JUROR WITH A COPY; ALTERNATIVELY, ENLARGED PHOTOGRAPHIC OR PROJECTED COPIES MAY BE USED.)

## 13.   PLAINTIFF'S LEGAL ISSUES

Plaintiff will establish a prima facie basis for proving that both defendants placed into the stream of commerce a defective product that was a proximate cause of plaintiff's injuries because the product was defectively designed within the meaning of a New Jersey Product Liability Act, N.J.S.A. 2A:58-(c)(2), (West 2011).

Plaintiff further contends that the defects in the product based upon the design of the product and the failure to contain adequate warnings were proximate causes of the injuries plaintiff sustained on September 27, 2007.

Plaintiff contends that he sustained damages for pain, suffering, disability, and impairment, and incurred lost wages, and medical expenses.

Plaintiff contends that the opinion by Judge Debovoise on June 8, 2011, constitutes law of the case as to some, if not all the defendants' current defenses.

14.   **DEFENDANTS' LEGAL ISSUES**

As outlined in more detail in J.H. Day's Motion for Summary Judgment, the question of whether KMC's refurbishing and sale of the ink mill to Union Ink constituted an intervening, superseding cause that relieves J.H. Day of any liability will be an issue at trial. Additionally, the question of whether Union Ink's alleged failure to warn plaintiff to use a nip point guard will also be an issue at trial.

KMC will argue that as the manufacturer of the mill, Littleford is ultimately responsible for any defect in the design, manufacture and/or warnings of the product. In addition, KMC will argue that the proximate cause of the accident was plaintiff's failure to use a nip point guard and/or Union Ink's failure to properly train and/or supervise its employees. In addition, as set forth in KMC's cross-motion for summary judgment, KMC contends that Union Ink's actions or inactions were a superseding cause of the accident.

J.H. Day and KMC will argue that any alleged defect in its design of the ink mill was not the proximate cause of Plaintiff's alleged injuries.

J.H. Day and KMC will argue that any alleged failure to warn regarding the use of the ink mill was not the proximate cause of Plaintiff's alleged injuries.

J.H. Day and KMC will present a state of the art defense pursuant to N.J. Stat. § 2A:58C-3a(1).

J.H. Day and KMC will present an adequate warning defense pursuant to N.J. Stat. § 2A:58C-4.

15.   **MISCELLANEOUS**

Set forth any other matters which require action by, or should be brought to the attention of, the Court.

16.   **JURY TRIALS**

Not later than _____

A.   Each party shall submit to the District Judge and to opposing counsel, a Trial Brief or memorandum in accordance with General Rule 27, with citations to

18

authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

B.      Counsel for each party shall submit to the Judge with a copy to opposing counsel, written request for instructions to the jury.  Supplemental requests for instructions may be submitted at any time prior to argument to the jury.  All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitted same.  In the case of multiple requests by a party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

C.      If any hypothetical questions to be put to an expert witness on direct examination, these shall be submitted to the Judge and opposing counsel.

D.      Counsel shall submit to the Judge, with a copy to opposing counsel, their proposed voir dire, if any.

17.    **NON JURY TRIALS**

Not later than _____

A.      Each party shall submit to the District Judge and to opposing counsel, a Trial Brief or memorandum in accordance with General Rule 27, with citations to authorities and arguments in support of its position on all disputed issues of law.  In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

B.      Counsel for each party shall submit to the Judge with a copy to opposing counsel, written request for instructions to the jury.  Supplemental requests for instructions may be submitted at any time prior to argument to the jury.  All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitted same.  In the case of multiple requests by a party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

C.      If any hypothetical questions to be put to an expert witness on direct examination, these shall be submitted to the Judge and opposing counsel.

18.    **TRIAL COUNSEL**

Trial counsel for the J.H. Day Defendants will be:
J. Michael Kunsch
Michael K. Yarbrough

Trial counsel for defendant Keith Machinery Corp. will be:
Scott Haworth

Trial counsel for plaintiff, Ramon Reyes will be:

Richard M. Winograd, Esq.

19.    **BIFURCATION** (Where appropriate, the issues relating to liability shall be severed and tried to verdict.  Thereafter, all issues relating to damages issues will be tried.)

The issue of liability and damages SHALL NOT be tried separately.

20.    **ESTIMATED LENGTH OF TRIAL**

5-8 days for liability and damages.

AMENDMENTS TO THIS PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED.  THE COURT MAY, FROM TIME TO TIME, SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.

  /s/ Richard M. Winograd
Richard M. Winograd, Esq.
Attorney for Plaintiff, Ramon Reyes
Ginarte, O'Dwyer, Gonzalez,
Gallardo & Winograd, LLP.
400 Market Street
Newark, NJ 07105
Tel: (973) 854-8400
Fax: (973) 643-1857
E-Mail: rwinograd@ginartelaw.com

Scott Haworth
Attorney for Defendant Keith
Machinery Corp.
Haworth Coleman & Gerstman, LLC
45 Broadway, 21st Floor
New York, New York 10006
Tel: (212) 952-1100
Fax: (212) 952-1110
Email:scott.haworth@hcandglaw.com

_/s/ J. Michael Kunsch_____
J. Michael Kunsch
Identification No. JK 4607
Sweeney & Sheehan, P.C.
1515 Market Street, 19th Floor
Philadelphia, PA 19102
Telephone:  (215) 563-9811
Facsimile:  (215) 557-0999
michael.kunsch@sweeneyfirm.com

Of counsel, admitted *pro hac vice*:
Michael K. Yarbrough
Elizabeth M. Norton
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, Ohio  43215
Telephone:  (614) 464-1211
Facsimile:   (614) 464-1737
myarbrough@fbtlaw.com
enorton@fbtlaw.com
Attorneys for J.H. Day Defendants


_____
United States Magistrate Judge