# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

RAMON REYES                                    Civ. No. 09-5309 (DRD)

    Plaintiff,

    v.

KEITH MACHINERY CORP., et al.

    Defendants.

---

## Statement to the Jury Panel

We are about to pick a jury in a civil case. The Plaintiff is Ramon Reyes. The Defendants are Keith Machinery Corp. and a grouping of four companies that will be referred to as "Littleford."

Mr. Reyes was an employee of Union Ink Company which manufactures ink for clothing and signs. It used eight three-roll mills to pulverize powdered ink so that it can be mixed smoothly and completely into a liquid. A three roll mill is a machine that uses three horizontally positioned rolls rotating in opposite directions and different speeds relative to each other to mechanically process viscous material.

Mr. Reyes was a mill operator and mill operators are required to periodically clean the machine. To do this the mill operator pours a solvent onto the mill rollers and wipes them down with a rag while the mill is operating at its lowest rate of speed.

In the evening of September 27, 2007, Mr. Reyes began to clean his ink mill. While cleaning the mill, the rag in Mr. Reyes's hand became caught on the nip point of the mill where

2/2/12

two of its three rollers came together. Mr. Reyes's hand was pulled into the machine, and he was injured before the mill could be stopped.

The ink mill was manufactured ~~many years ago~~before 1950 by J.H. Day Company, which is no longer in existence. The group of four companies we have referred to as Littleford is the successor to J.H. Day Company. In 1989 Defendant Keith Machinery purchased the ink mill from another company, refurbished it and sold it to Plaintiff Reyes's employer Union Ink.

This is what is called a products liability case. Mr. Reyes is claiming that his injuries were caused by defects in the ink mill manufactured by Littleford's predecessor, reconditioned by Keith Machinery and sold by Keith Machinery to Union Ink. Littleford and Keith Machinery deny that the ink mill was defective in any way and further allege that Mr. Reyes's ~~claim and the Defendants' defense raise~~failure to use an available safety device was the cause of the accident. This case raises many complicated factual and legal issues. The factual questions will have to be decided by a jury.

It is expected that the trial will take about two weeks. I need not remind you that jury service, like service in the armed forces, is among the most important duties of a citizen, and excuses can be given only for the most important personal or business reasons. The manner in which the trial will be conducted will lighten the burden in this case.

At the outset of the case jury compensation is $40.00 a day. After the 10th day the compensation becomes $50.00 a day. Further, the trial day will be from 9:00 a.m. to 2:00 p.m. This will enable jurors to leave before traffic increases and to pick up school children.

Each of you is a possible juror and I want each of you to treat everything that happens here as attentively and seriously as if you had already been selected to serve on the jury.

## A. <u>Not Talking About the Case, Etc.</u>

The first thing I am going to ask you to do is not to talk to anyone about the case or the parties in the case. You must not talk about it among yourselves or, when you leave the courthouse for the evening, or to anyone else. This includes your neighbors, your family, your friends.

From this point forward you must not read newspaper or magazine articles about the case or listen to or watch anything on the radio or TV about it. Do not do any independent research on matters relating to the case. Do not do any research on the Internet, for example.

This case perhaps will have coverage in the press, radio and TV. Some of you may have read or heard something about the case. That does not mean you cannot serve as a juror if you are able to put those matters aside and decide the case fairly and impartially simply on the basis of the evidence which is produced in court. But to ensure fairness it is very important that as the jury is selected and the trial proceeds jurors and potential jurors consider only what happens in the courtroom and not be influenced by reports about the case from outside sources. That is why I am directing each of you not to talk about the case or read or listen to anything about it.

## B. <u>Participants in the Trial</u>

At this time I shall introduce to you the persons who will be participating in the trial.

The Plaintiff, as I mentioned before, is Roman Reyes. He is represented by Mr. Richard M. Winogard of the law firm of Ginarte, O'Dwyer & Winograd. One of the Defendants is Keith Machinery Corporation which is represented by Mr. Scott L. Haworth and Mrs. Abigail Bowen of the law firm of Haworth Coleman & Gerstman, LLC. The other Defendant is a group of corporations which stand in the shoes of the original manufacturer of the three roll mill. This group consists of Makino, Inc., Littleford Brothers, Inc., Littleford Day, Inc. and LBF Inc. They

will be referred to collectively as "Littleford." They will be represented by Mr. ~~John Michael~~ ~~Kunsch and Mr.~~ Michael K. Yarbrough of the law firm of ~~Sweeney and Sheehan~~ <u>Frost Brown</u> <u>Todd</u>.

## C. <u>Procedure to be Followed</u>

Now I want to tell you about the jury selection procedures we will follow.

The purpose of these procedures is to enable me to determine if there is some reason why I should excuse you. For example, if one of you were the mother or father or spouse of one of the attorneys in the case, you should not serve on the jury.

Also the jury selection procedures provide information to the attorneys for the parties so that they can exercise what we call peremptory challenges - that is challenges for which no reason need be given by counsel.

There are a few questions which I have to ask you individually. Therefore to save time we have prepared a questionnaire which will be distributed to each of you shortly. The questionnaire has a large number of questions which we don't have to ask you individually, one at a time. For example the questionnaire asks you about your education, whether you know any of the participants in the trial, what newspapers you read. Some of your answers may require follow-up questions, and I will ask you the follow-up questions when I talk with you individually.

For example, one of the questions on the questionnaire is whether you have served on a jury before. If you answer "yes", I will ask you when, where and what kind of cases you heard. Please do not discuss the questionnaire or your or anyone else's answers.

When you have finished answering the questions, give the questionnaire to one of the Clerk's Office people and they will bring it to me and to the attorneys.

2/2/12

After the questions have been answered and duplicated you will be brought to the courtroom. Initially ten persons will be asked to sit in the jury box. On each seat there will be a sheet of paper on which there will be ten questions. Quite frankly the reason for not putting those questions on the questionnaire is to give you an opportunity to speak and to let the lawyers get to know you as a person. They can't do that as well when they simply read answers on a questionnaire.

2/2/1

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RAMON REYES                                Civ. No. 09-5309 (DRD)

     Plaintiff,

     v.

KEITH MACHINERY CORP., et al.

     Defendants,

_____

## JURY QUESTIONNAIRE

## INSTRUCTIONS

     1.   Answer each of the following questions by making the appropriate entry on the questionnaire. If you do not understand a question, leave the space for the answer blank.

     2.   <u>Do not discuss</u> your answers or the case or any party or attorney in the case with anyone else.

     3.   When you finish the questionnaire, please deliver it to the Court Clerk.

Please fill in the blanks as indicated. Where there are lines to be filled in, put an "X" or a number, whichever is appropriate?

1. 1.   Name (Print) and jury number:

2

2/2/1

2.~2.~~ Age and place of birth:

3.~3.~~ What is your educational level?
    If college, what college and field of study?

4.~4.~~ Do you have any illness or handicap, such as a hearing or eyesight disability, which would make it difficult for you to serve as a juror?

     Yes _____ No _____

5.~5.~~ What daily newspapers do you read?

6.~6.~~ What magazines do you read regularly?

7.~7.~~ What television news broadcasts do you usually watch?

8.~8.~~ To what clubs or other organizations do you and the members of your immediate family belong? If none, state "None".

2/2/1

2

9. 9. Have you or any member of your family or close friend been involved in a work place accident or injury?

Yes _____      No _____

Who?

When?

Where?

10. 10. Have you or any members of your family ever filed a law suit or claim for a personal injury?

Yes _____            No _____

Who?

When?

Where?

2

2/2/1

11.    Have you or any member of your family ever worked with a 3-roll mill?

Yes _____    No _____

12.    Have you or any member of your family suffered a significant injury from using equipment supplied by an employer?

Yes _____    No _____

~~11.~~ 13.    Have you ever served on a jury?

Yes _____    No _____

~~12.~~ 14.    Have you ever participated in a trial as a plaintiff or a defendant?

Yes _____    No _____

~~13.~~ 15.    The parties and lawyers who will appear on their behalf in this case are:

2                                                                                          2/2/1

           Ramon Reyes

               Richard M. Winograd, Esq.
               Ginarte, O'Dwyer & Winograd


           Keith Machinery Corporation

               Scott L. Haworth, Esq.
               Abigail Bowen, Esq.
               Haworth Coleman & Gerstman, LLC

           Littleford (Makino, Inc., Littleford Brothers, Inc., Littleford Day, Inc., and
           LFB Inc.)

               ~~John Michael Kunsch, Esq.~~
               Michael K. Yarbrough, Esq.
               ~~Sweeney and Sheehan~~<u>Frost</u>
               <u>Brown Todd</u>

<u>16.</u>    Do you know the Plaintiff, Ramon Reyes?

               Yes  _____                    No  _____


<u>17.</u>    Have you or any member of your family or close personal friend ever been employed by
or had any business dealings with any of the Defendants or named companies?

               Yes  _____                    No  _____

<u>18.</u>    Do you know or have you had any professional or social relations with any of the
attorneys or law firms in this case?

               Yes  _____ No _____

2/2/1

2

~~14.~~ 19. _____ Do you know Dickinson R. Debevoise, the judge in this

case?

Yes _____ No _____

~~15.~~ 20. Have you, any member of your family or close personal friend had any employment or business relationship with Union Ink Company?

Yes _____ No _____

~~16.~~ 21. Have you or any member of your family been associated with a governmental or private agency or organization that evaluates the safety of any product or equipment?

Yes _____              No _____

~~17.~~ 22. Is there any urgent personal or business reason why you could not serve as a juror in this case?

Yes _____              No _____

If so, what is that reason?

2/3/12

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RAMON REYES                              Civ. No. 09-5309 (DRD)

    Plaintiff,                         **Preliminary Jury Instructions**

    v.

KEITH MACHINERY CORP., et al.

    Defendants.

---

### Role of Jury

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

### Description of the Case

As I mentioned when describing the case to you before we commenced selecting the jury, this is what is called a products liability case. The product involved is a three-roll mill. A three-roll mill is a machine that uses three horizontally positioned rolls rotating in opposite directions

and at different speeds relative to each other to mechanically mix, refine, disperse, or homogenize viscous materials. Union Ink, which was Mr. Reyes's employer, used its three-roll mills to pulverize powdered ink so that it could be mixed smoothly and completely into a liquid.

Mill operators are required to periodically clean their machines so that a new color of ink can be processed. To clean the machine, the mill operators pour a solvent onto the mill rollers and wipe them down with a rag while the mill is running at its slowest rate of speed

The three-roll ink mill involved in this case was manufactured by J.H. Day Company some time prior to 1950. J.H. Day Company is no longer in business and its successor is the four companies that will be referred to collectively as "Littleford."

As originally manufactured by J.H. Day Company the ink mill had no safety devices that would prevent a worker's hands from becoming accidentally trapped in the nip point between the mill's rollers. ~~Later models of ink mills manufactured by J.H. Day included safety features to prevent this sort of accident.~~J.H. Day, however, did supply an Instruction Manual with the mill which did discuss the safe use of the mill.  Additionally no standards or regulations were in effect at the time that this mill was first manufactured and sold which would have recommended or required any safety devices on the mill.  Once such recommendations and standards were enacted in 1975 J.H. Day complied with those directives and incorporated safety features on these later mills.  These features included removable nip point guards, also called "wash up sticks," which are triangular wedges placed above the rollers during cleaning. The wash up sticks prevent any objects from becoming caught in the nip point. Other safety features include various forms of rapid shutdown devices such as "mushroom buttons" and "airplane cords" which permit a worker to halt the machine quickly if an accident occurs.

Defendant Keith Machinery purchased the ink mill in 1989. It refurbished the mill, attached warning labels and resold it to Union Ink~,~.  The mill as sold to Union Ink complied

with all applicable safety requirements.

In these jury charges I sometimes refer to Littleford and Keith Machinery collectively as "Defendants." You may find one, both, or neither of them liable to Mr. Reyes.

In the evening of September 27, 2007, Mr. Reyes began to clean his ink mill so that the color could be changed. Mr. Reyes did not use a "wash up stick" in the mill when he was doing this cleaning. While cleaning, the rag in Mr. Reyes's hand became caught in the nip points of the mill where two of its three rollers came together. In an instant, Mr. Reyes's hand was pulled into the machine, ~~crushing~~injuring his thumb.

Mr. Reyes's product liability claim is that the ink mill was defectively designed because it did not have safety devices or controls to prevent a worker's hands from becoming accidentally trapped in the nip point between the mill's rollers. Mr. Reyes's product liability claim is also that the ink mill was defective because the Defendants failed to provide adequate warnings or instructions about the dangers the ink mill presented.

Defendants contend that the ink mill was not defectively designed and that it was provided with adequate warnings about the dangers that the ink mill presented. Keith Machinery had also provided to Union Ink safety equipment including wash up sticks for use on this mill. Keith Machinery had also reminded Union Ink on multiple occasions that wash up sticks needed to be available at each mill. It was the obligation of Union Ink to comply with these recommendations and legal requirements to have such safety devices on the mill and to train its employees – like Mr. Reyes – in the proper manner to clean the mill.

This is a civil case. Mr. Reyes is the party who brought this lawsuit. Defendants are the parties against whom the lawsuit was filed. Mr. Reyes has the burden of proving his case separately as against each of the Defendants by what is called the preponderance of the evidence. That means Mr. Reyes has to prove to you, in light of all the evidence, that what he claims is

more likely so than not so. To say it differently: if you were to put the evidence favorable to Mr. Reyes and the evidence favorable to a Defendant on opposite sides of the scales, Mr. Reyes would have to make the scales tip somewhat on his side. If Mr. Reyes fails to meet this burden, the verdict must be for the Defendant in question. If you find after considering all the evidence that a claim of fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

There may be some issues on which a Defendant will have the burden of proof. If so, I shall advise you of them in the final jury instructions.

<u>Design Defect:</u> To establish a claim for a design defect, Mr. Reyes must prove by a preponderance of the evidence that (a) the three-roll mill product was defectively designed by the responsible Defendant, (b) that the three-roll mill was being used for an intended or reasonably foreseeable purpose and was being used by Mr. Reyes in a reasonably foreseeable manner on the day of the accident and (c) that the defect in the three-roll mill was a proximate cause of the injury to Mr. Reyes.

Littleford and/or Keith Machinery as the manufacturer and/or seller of the three-roll mill had the duty to design that product in a manner so that it was reasonably fit, suitable and safe for its intended or reasonably foreseeable uses. Littleford and/or Keith Machinery owed the duty to direct users of the product or reasonably foreseeable users of the product, and to those who may reasonably be expected to come into contact with it.

2/3/12

In determining whether the three-roll mill was defectively designed you will have to decide whether the safety benefits from designing the three-roll mill with the safety features (as proposed by Mr. Reyes) were greater than the resulting costs or disadvantages caused by the proposed design, including any diminished usefulness or diminished safety in the three-roll mill. If the failure to incorporate a practical and technically feasible safer alternative design made the three-roll mill not reasonably safe, then the three-roll mill was designed in a defective manner.

If, on the other hand, Mr. Reyes has not proven there existed a practical and technically feasible safer alternative, or if you find that the three-roll mill as designed was reasonably safe, then the three-roll mill as~~was~~ not designed in a defective manner.

Misuse of Unit: If you determine that the three-roll mill was designed in a defective manner and that the defect existed before the unit was sold by or left the control of a Defendant then you must decide whether the three-roll mill at the time of the accident, was either not being misused by Mr. Reyes or was being misused in a reasonably foreseeable manner. In this regard, Mr. Reyes has the burden of showing, by a preponderance or greater weight of the evidence, that he was not misusing the unit or that his misuse was objectively foreseeable. In this case, Defendants had a duty to prevent injuries caused by any foreseeable misuse of the three-roll mill. Stated another way, even if Ramon Reyes was misusing the three-roll mill on the day of the accident, Defendants would still be liable in this case if Mr. Reyes's misuse was reasonably foreseeable. ~~Mr. Reyes's knowledge of the three-roll mill's dangers does not absolve Defendants of this duty to prevent foreseeable injuries.~~

Defendants contend that Mr. Reyes's failure to use the wash-up sticks or a nip point guard or to follow the regulatory wash-up procedure were not reasonably foreseeable and that this misuse was the sole proximate cause of the accident. If you ~~conclude Mr. Reyes's conduct was only a contributing cause of the accident and not the sole cause of the accident Defendants remain liable for the accident.~~find that Mr. Reyes' manner of using this mill was not reasonably foreseeable by the defendants, then the defendants did not breach any duty owed to Mr. Reyes.

16

2/3/12

Proximate Cause: If you find that the Mr. Reyes has proven by a preponderance of the credible evidence that the product was designed in a defective manner; that the defect existed when the three-roll mill left Defendants' control; and that when the accident happened, the three-roll mill was not being misused, or if it was being misused, that the misuse was objectively foreseeable, then you must decide whether the alleged defect in the three-roll mill was a proximate cause of the accident and Mr. Reyes's injuries. Proximate cause means that the design defect was a substantial factor which either by itself, or in combination with another cause or causes, brought about the accident.

Littleford contends that Keith Machinery's refurbishing of the three-roller mill was ~~an intervening cause~~a substantial alteration that relieved it of liability. ~~An intervening cause that would relieve Littleford of liability is an act of an independent agency that is the sole cause of the accident.~~ A substantial alteration is a change or modification made to the product after it was manufactured or sold that alters the design or function of the product and has a significant or meaningful effect on the product's safety when used.

~~Keith Machinery contends~~Defendants contend that the proximate cause of the accident was Mr. Reyes's failure to use a nip point guard. If the three-roller mill was defective, the defect is a proximate cause of the accident even if Mr. Reyes's conduct was also a partial or contributory cause. ~~Only if~~If Mr. Reyes's conduct was the only cause of the accident ~~will the~~, however, then any alleged product defect would not constitute a proximate cause of the accident.

The Court will give more detailed instructions concerning proximate cause before closing arguments of counsel.

Inadequate Warnings: A manufacturer or seller of a product has a duty to provide adequate warnings or instructions about the dangers a product may present. Here Mr. Reyes claims that the Defendants Littleford and Keith Machinery failed to provide adequate warnings

17

2/3/12

about the dangers of the three-roll mill. Defendants Littleford and Keith Machinery assert that the product did contain an adequate warning. An adequate warning or instruction will communicate sufficient information about the dangers of the product and how to use the product safely.

To establish his claim of failure to warn Mr. Reyes must prove all of the following elements by a preponderance of the credible evidence:

1. The three-roll mill failed to contain an adequate warning or instruction.

2. The failure to adequately warn existed before the three-roll mill left the control of Littleford or Keith Machinery.

3. Mr. Reyes was a direct or reasonably foreseeable user, or a person who might reasonably be expected to come in contact with the three-roll mill.

4. Mr. Reyes would have followed an adequate warning if it had been provided.

5. The failure to adequately warn was a proximate cause of Mr. Reyes's accident and resulting injuries.

At the end of the case I will give you much more detailed oral and written instructions about the applicable law. I think at this time this abbreviated description of the claims and defenses is sufficient for you to understand the reasons why the parties are introducing the evidence that they will bring before you.

## Conduct of the Jury

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among

2/3/12

yourselves. If anyone should try to talk to you about the case bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. That is why you are asked to wear your juror tags. It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial.

Again, do not reach any conclusion on the claims or defenses until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

## Bench Conference

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference. If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

The evidence from which you are to find the facts consists of the following:

1.  The testimony of the witnesses;
2.  Documents and other things received as exhibits;
3.  Any facts that are stipulated - - that is, formally agreed to by the parties; and
4.  Any facts that are judicially noticed — that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1.  Statements, arguments, and questions of the lawyers for the parties in this case;
2.  Objections by lawyers
3.  Any testimony I tell you to disregard; and
4.  Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence, When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced

by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question, If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

### Direct and Circumstantial Evidence

Do not be concerned about whether evidence is "direct evidence" or "circumstantial evidence." You should consider and weigh all of the evidence that is presented to you. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### Credibility of Witnesses

In deciding what the facts are, you may have to decide what testimony you believe and whatand what testimony you do not believe. You are the sole judges of the credibility of the witnesses.

"Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;
(2) the quality of the witness's understanding and memory;
(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

## Jury Questions for Witnesses

Only the lawyers and I are allowed to ask questions of witnesses. You are not permitted to ask questions of witnesses.

## Note Taking by Jurors

If you wish, you may take notes during the presentation of evidence and the summations of attorneys at the conclusion of the evidence. My Courtroom Deputy will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1. Note-taking is permitted, not required. Each of you may take notes. No one is required to take notes.

2. Be brief. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of note-taking may be distracting.

3. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow

22

juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory.

### Description of Trial Proceedings

The trial will proceed in the following manner:

First, the attorney for Mr. Reyes will make an opening statement to you. Next, the attorneys for Defendants make opening statements. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

Mr. Reyes goes first because a plaintiff has the burden of proof. Mr. Reyes will present witnesses whom counsel for Defendants may cross-examine, and Mr. Reyes may also present other evidence. Following Mr. Reyes's case, Defendant may present evidence. Counsel for Mr. Reyes may cross-examine witnesses for the defense. After the parties' main case is presented, they may be permitted to present what is called rebuttal evidence.

After all the evidence has been presented, I will instruct you on the law and then the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. Once the closing arguments are completed, I will give you instructions about how to proceed with your deliberations. After that you will retire to the jury room to deliberate on your verdict in this case.