## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| RAMON REYES, | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| KEITH MACHINERY CORP., et al. | NO. 2:09-cv-05309-DRD-MAS |
| Defendants. | |

### RESPONSE OF DEFENDANTS MAKINO, INC., LITTLEFORD BROTHERS, INC., LITTLEFORD DAY, INC., AND LFB INC. TO PLAINTIFF'S MOTIONS IN LIMINE

Defendants Littleford Brothers, Inc., Littleford Day, Inc., LFB Inc., and Makino, Inc. (collectively, "Littleford"), by and through counsel, submit this consolidated Response to Plaintiff's Motions in Limine:

I.      **First Motion in Limine to Permit Plaintiff to Rely on ANSI Standard B177.1 from the Year 2007, for the Limited Purpose of Rebutting the Defendant's Contention that the Design Mandated (specifically and only as it relates to the speed of the rollers) in 2007 was Not Feasible to Implement at the Time the Product was Placed in the Stream of Commerce (Doc. 98)**

The Court should deny Plaintiff's First Motion in Limine which seeks to allow Plaintiff to rely on an ANSI standard that went into effect more than 50 years after the three-roll mill was manufactured and 12 years after Union Ink bought the mill. Plaintiff claims to want to use the standard to prove the feasibility of an alternative design. But as Defendants argued in their Motion in Limine, the Court should exclude all evidence of any version of ANSI B177.1 after 1997 and any post-accident modifications to the subject mill at trial. Reference to a version of the standard that was admittedly not applicable at the time of sale or accident, and any design

1

changes or additional safety features contained therein, will unfairly prejudice Defendants and mislead the jury to conclude that the mill was somehow defective.

Plaintiff wrongly claims that the testimony of Keith Machinery's Jonathan Hatz supports the admission of the modern standards: "Mr. Hatz acknowledged that technology was available in 1995 to slow the triple-roll machine as a means of protecting against nip point injuries." First Motion in Limine at 3. But a review of Mr. Hatz's actual deposition testimony reveals that Plaintiff's summary of the testimony overlooks the fact that Mr. Hatz specifically said that in 1995, the speed reduction requirements of the 2007 standard were not technically feasible:

> A. In the A.N.S.I. 2007, there is a requirement for a wash-up mode which is defined as a very, very slow speed used to be used when the operator is cleaning the mill. And that speed must be at least 10 percent or less than the full speed of the mill.
> ...
> Q. In 1995 when this machine was sold to Union Ink, was that available if the customer wanted it, the VFD [variable frequency drive]?
> A. I'm thinking that there might have been some very early rudimentary VFDs on the market; primarily, only for speed control. I don't think the incorporation of what you referred to as emergency braking was available back then.
> Q. But for wash-up mode it was?
> MS. BOWEN: Objection to form.
> Q. Is that what you said or have I misunderstood you?
> A. I would say that the rudimentary one would be able to do that. **But in the context of this standard being running the machine at less than 10 percent of full speed, your limitation would be the motor that wouldn't/couldn't handle.** You'd burn out the motor. So the combination --
> Q. You wouldn't get that slow?
> A. You wouldn't get that slow.
> Q. It would be slower, but not that slow?
> A. It would get slower. But if you went down, if you ran it that low for any period of time, you would require a new motor.

Hatz Dep. at p. 66: 12-17; p. 68:9-25; 69: 2-8 (emphasis added). Plaintiff argues that Mr. Hatz's assertion that the cost of incorporating the feature more than 12 years ago would have made the produce unmarketable is "contradicted by the offer to sell the product with the aforementioned

modification." First Motion in Limine at 3. But whether Keith Machinery sells the product with a speed reduction modification in 2012 is not relevant to whether it was feasible to do so in 1995.

Even if the proposed evidence is relevant, Fed. R. Evid. 403 provides that: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See Wolf by Wolf v. Proctor & Gamble Co.*, 555 F.Supp. 613, 622 (D.N.J. 1982) ("Unfair prejudice in the context of Fed.R.Evid. 403 means 'an undue tendency to suggest decision on an improper basis … .'"); *see also Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3d Cir. 2002) ("Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility.")

Here, Plaintiff's desire to introduce a standard that was promulgated decades after the mill was originally manufactured and 12 years after the mill was sold to Union Ink cannot outweigh the confusion and prejudice that could result if the jury hears about the 2007 ANSI B1771.1 standard. The Court should deny Plaintiff's First Motion in Limine.

**II.    Second Motion in Limine for a Limiting Instruction as to the Defendant's Introduction that Union Ink was Negligent in Deficiently Training the Plaintiff (Doc. 99)**

The Court should deny Plaintiff's Second Motion in Limine, which seeks to have the Court issue a limiting instruction every time Defendants present evidence about Union Ink's failure to train Plaintiff in safe cleaning procedures. Plaintiff acknowledges that the Court's charge to the jury will address the Plaintiff's burden of proof on his design defect and failure to warn claims. Second Motion in Limine at 1. Plaintiff also acknowledges that Union Ink's failure to properly train Plaintiff in safe cleaning procedures is relevant and admissible. *Id.* at 3.

3

While Defendants acknowledge that evidence regarding Union Ink's actions is limited to certain applications, Plaintiff's motion improperly limits the areas where such evidence is applicable.  Plaintiff states that such evidence is only permissible to show that Union Ink's negligence is the sole proximate cause of Plaintiff's injuries.  However, evidence of Union Ink's negligence could be introduced under the risk utility analysis to discuss the safety components of the machine, a substitute design, or the ability to remove an unsafe characteristic from the machine. *Johansen v. Makita U.S.A., Inc.*, 128 N.J. 86, 96 (N.J. 1992)(*citing O'Brien v. Muskin Corp.*, 94 N.J. 169, 186  (N.J.1983)(superseded by statute on other grounds as recognized by Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 73 (N.J. 1990))).  Evidence may also be introduced to show that Union Ink's inactions made Plaintiff's use of the machine unforeseeable. *McGee v. Stihl Inc.*, CIV.A. 08-520 MLC, 2011 WL 6130417 (D.N.J. Dec. 7, 2011).  Finally, under the failure to warn aspect of this matter, Union Ink's actions will be relevant to discuss the factual dispute regarding the warnings issued by Defendants. *See Coffman v. Keene Corp.*, 133 N.J. 581, 607-08 (N.J. 1993)("An employer's conduct, in either thwarting effective dissemination of a warning or intentionally preventing employees from heeding a warning, may be a subsequent supervening cause of an employee's injury that will serve to break the chain of causation between manufacturer and employee").

Furthermore, Plaintiff asks the Court to give a limiting instruction whenever evidence regarding Union Ink's wrongdoing is presented.  This request is overly broad and does not reflect the New Jersey Supreme Court's holding in *Johansen*, supra, 128 N.J. at 98-99.  The Court held that limiting instructions regarding the applicability of limited evidence do not require a complete determination before trial nor do they require constant reiteration.  The Court stated that a trial court "could have included a repetition of the standard instruction that the jury refrain

4

from making any findings or drawing any conclusions with respect to such evidence until the close of the case and the court's final instructions to the jury before its deliberations" or stated that certain evidence (in *Johansson*, it was Plaintiff's conduct in cutting a board) had "only limited relevance in strict-products-liability litigation, and that its relevance would be explained as part of the comprehensive instruction at the close of the case." Id.

The fact that Defendants seek to introduce evidence of Union Ink's negligence as part of its defense does not mean that Plaintiff can request an overbroad instruction limiting the use of the evidence and consistently interrupting Defendants' case in chief to give a constant, overreaching instruction. Just because evidence will be unfavorable to Plaintiff does not mean Plaintiff is entitled to a limiting instruction each time it is presented. Plaintiff is essentially arguing about jury instructions in the guise of a motion in limine. Littleford respectfully requests that the Court deny Plaintiff's Second Motion in Limine.

III.    **Third Motion in Limine for a Limiting Instruction as to the Defendant's Introduction of Evidence that Union Ink was Negligent in Failing to Properly Implement Supplemental Safety Features Provided by Defendant Keith Machinery Corporation (Doc. 100)**

As stated at length above, the Court should deny Plaintiff's Third Motion in Limine, which also seeks to have the Court issue a limiting instruction every time Defendants present evidence about Union Ink's failure to implement supplemental safety features provided by Keith Machinery. As previously stated, Plaintiff acknowledges the relevance of such evidence. *See* Third Motion in Limine at 2. Again, Plaintiff wants a limiting instruction every time there is evidence that is unfavorable to his case.

The law regarding the scope of Defendants' permissible uses of such evidence is set forth above. The same law applies in that Defendants are permitted to discuss Union Ink's actions with regard to being the sole proximate cause, under the risk utility analysis, with regard to

5

foreseeable misuse, and under the failure to warn theory of the case. The Court will issue jury instructions with the appropriate charge explaining Plaintiff's burden of proof. The Court is also permitted to issue a broad warning as set forth in *Johansson*. Plaintiff has provided no valid reason that the Court should also issue repeated limiting instructions that will be redundant in the face of proper jury instructions nor has Plaintiff provided any grounds why a general warning may be given and Defendants be allowed to put on their defense as permitted by the cases listed above. As in his Second Motion in Limine, Plaintiff is essentially arguing about jury instructions in the guise of a motion in limine. Littleford respectfully requests that the Court deny Plaintiff's Third Motion in Limine.

## IV.    Fourth Motion in Limine that Evidence of Plaintiff's Conduct be Barred Entirely in the Context of this Workplace Injury (Doc. 101)

The Court should deny Plaintiff's Fourth Motion in Limine, which seeks to exclude evidence of Plaintiff's conduct. Plaintiff's conduct with regard to the three-roll mill is absolutely relevant. While Littleford agrees that the specific conduct of Plaintiff cannot be used to argue comparative negligence, evidence of Plaintiff's conduct is relevant to the question of whether it his conduct was the sole proximate cause of the accident.

New Jersey law is clear that in the context of workplace injuries, a defense of comparative or contributory negligence is not available. *See, e.g., Lyons v. Caterpillar, Inc.*, 2005 WL 3358068 (N.J.Super.A.D. 2005) (discussing the evolution of New Jersey case law on the subject). "Nevertheless, even though a defense of contributory or comparative negligence is not available when an employee is injured at the workplace while performing a job task, **evidence of a plaintiff's negligence is admissible on the issue of proximate cause.**" *Lyons*, 2005 WL 3358068 at 6 (emphasis added), citing *Fabian v. Minster Machine Co.*, 258 N.J.Super. 261, 278, 609 A.2d 487 (N.J.Super.A.D. 1992), *certif. denied*, 130 N.J. 598 (1992);

*Conguisti v. Ingersoll-Rand Co.*, 306 N.J.Super. 126, 135 n.1, 703 A.2d 340 (N.J.Super.A.D. 1997); *Johansen v. Makita U.S.A., Inc.*, 128 N.J. 86, 102, 607 A.2d 637 (N.J. 1992). "In other words, even in the workplace setting plaintiff's negligence may be considered when a defendant claims that the plaintiff's conduct is the sole proximate cause of the injury, as opposed to a contributing factor." *Id.*, citing *Grier v. Cochran W. Corp.*, 308 N.J.Super. 308, 325 (N.J. Super.A.D. 1998).

Thus, evidence of Plaintiff's conduct—such as whether or not he used an available safety measure—is relevant and admissible to the question of whether that conduct was the sole proximate cause of his injuries. A proper limiting instruction from the Court will ensure that the jury considers Plaintiff's conduct only for the issue of proximate cause. Plaintiff's Fourth Motion in Limine should be denied.

Respectfully submitted,

 /s/ J. Michael Kunsch
J. Michael Kunsch
Identification No. JK 4607
Sweeney & Sheehan, P.C.
1515 Market Street, 19th Floor
Philadelphia, PA 19102
Telephone:  (215) 563-9811
Facsimile:  (215) 557-0999
michael.kunsch@sweeneyfirm.com

Of counsel, admitted *pro hac vice*:
Michael K. Yarbrough
Elizabeth M. Norton
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, Ohio  43215
Telephone:  (614) 464-1211
Facsimile:  (614) 464-1737
myarbrough@fbtlaw.com
enorton@fbtlaw.com
Attorneys for J.H. Day Defendants

8

## ELECTRONIC CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing has been served on all parties via their counsel of record through the Court's ECF System this 19 day of March, 2012.  For any counsel not registered to receive filings electronically, a copy of the foregoing will be sent by regular U.S. Mail, postage pre-paid.

William M. Brennan

COLLibrary 0048604.0577249  335601v1

9